Barnes, Sheriff, *v*. Jones.[*]

(In Banc. April 13, 1925.)

[103 So. 773. No. 24365.]

1. Taxation. *Tax on right of residents to own stock of nonresident corporations held void.*

  The tax "of one-half of one per centum upon the right of residents of Mississippi to own each and every share of the capital stock of nonresident corporations, stock companies, associations or

trust estates, organized and conducting business for profit," imposed by chapter 129, Laws of 1924, is a property tax and not a privilege tax, and violates section 112 of the Constitution of 1890, providing that taxation shall be uniform and equal throughout the state.

2. PLEADING. *Demurrer admits only well-pleaded facts; recital in declaration of alleged claim or defense of defendant is not averment of fact, existence of which is admitted by demurrer.*
   A demurrer admits only facts that are well pleaded, and does not admit conclusions, either of fact or of law, and a mere recital in a declaration of an alleged claim or defense of the defendant is not an averment of a fact, the existence of which is admitted by a demurrer.

3. TAXATION. *State may tax stock of foreign corporation owned by residents; "personal property."*
   The shares of capital stock of a corporation are "personal property," and the state has the power to tax shares of stock of a foreign corporation which are owned by the residents of the state.

4. TAXATION. *Burden is on one claiming exemption from taxation to establish right thereto.*
   An exemption from taxation will never be presumed, and the burden is on one claiming such an exemption to establish clearly his right therto.

5. TAXATION. *Exemption from taxation should not be enlarged by construction.*
   If an exemption from taxation is granted, it should not be enlarged by construction, since the presumption is that the state has granted all it intended to grant.

6. TAXATION. *All property within state is to be taxed except that specifically exempted.*
   Section 4251, Code of 1906, section 6878, Hemingway's Code, declares the general law and policy of the state in regard to exemptions from taxation, and provides that all property within the territorial limits of the state shall be taxed, except such as may be specifically exempted.

7. TAXATION. *Capital stock of foreign corporation owned by resident not exempt from taxation.*
   Section 4251, Code of 1906, section 6878, Hemingway's Code, which enumerates the property that shall be exempt from taxation in this state, contains no exemption of the capital stock of a foreign corporation, and no such exemption is found in any statute of the state.

8. Taxation.   *All taxable property brought into state or acquired or held by any person before February 1st in any year is subject to assessment and taxation.*

   Section 4257, Code of 1906, section 6888, Hemingway's Code, requires that all taxable property brought into the state or acquired or held by any person before the 1st day of February in any year shall be assessed, and the taxes thereon paid for that year.

9. Taxation.   *Taxpayer is required to return value of stock in corporation domiciled outside state.*

   Chapter 101, Laws of 1916, section 6904, Hemingway's Code, providing a form for printed lists or assessment blanks to be furnished the taxpayers for use in returning their property for assessment, expressly requires that the taxpayer shall return for taxation, among other items of property, the value of all shares or certificates of stock in any corporation, stock company, or association domiciled outside of this state.

10. Taxation.   *Taxpayer is required to list shares of stock in foreign corporation and execute oath that list is true account of all taxable personal property.*

    Under section 4272, Code of 1906, section 6906, Hemingway's Code, a taxpayer, in returning his property for assessment and taxation, is required to fill out a printed assessment list or blank in the form prescribed by chapter 101, Laws of 1916, section 6904, Hemingway's Code, which requires the disclosure and listing of the "value of all shares or certificates of stock in any corporation, stock company or association, domiciled outside of this state," owned by the taxpayer; while under sections 4267 and 4271, Code of 1906, sections 6901 and 6905, Hemingway's Code, the taxpayer is required to execute an oath that the list or assessment returned is a just and true account of all of his taxable personal property.

11. Taxation.   *Under provisions of Code, stock of foreign corporation owned by resident is taxable, and such taxation not unconstitutional.*

    Section 4251, Code of 1906, section 6878, Hemingway's Code, declaring that all property in the state shall be taxed except that which is specifically exempt, and chapter 101, Laws of 1916, section 6904, requiring the taxpayer to return for taxation the value of all shares of stock in foreign corporations owned by him, and other pertinent statutes quoted, clearly and unequivocally impose taxes on the shares of stock of a foreign corporation owned by residents of this state, and the taxation of such

stock violates no constitutional provision of this state or of the United States.

HOLDEN, J., and SMITH, C. J., dissenting.

---

*Headnotes 1. Taxation, 37 Cyc., p. 731; 2. Pleading, 31 Cyc., pp. 333, 335; 3. Taxation, 37 Cyc., p. 864; On power to tax shares of stock owned by residents in foreign corporations, see notes in 58 L. R. A. 578, 580; L. R. A. 1915C, 942; 26 R. C. L., pp. 184, 289; 3 R. C. L. Supp., p. 1459; 5 R. C. L. Supp., p. 1399; 4. Taxation, 37 Cyc., p. 891; 5. Taxation, 37 Cyc., p. 893; 6. Taxation, 37 Cyc., p. 773; 7. Taxation, 37 Cyc., p. 864; 8. Taxation, 37 Cyc., p. 769; 9. Taxation, 37 Cyc., p. 993; 10. Taxation, 37 Cyc. pp. 993, 994; 11. Taxation, 37 Cyc. p. 864.

APPEAL from circuit court of Covington county.

HON. W. L. CRANFORD, Judge.

Suit by Willis J. Barnes, sheriff and tax collector, against Henry T. Jones. From judgment sustaining separate demurrers to count and declaration, plaintiff appeals. Judgment sustaining demurrer to first count sustained, and reversed as to sustaining demurrer to second count, and cause remanded.

*Green, Green & Potter,* for appellant.

The court below on a demurrer to a declaration held this act violative of section 112 of the Constitution. But, with deference, that section does not apply: (a) To privilege taxes: *Clarksdale Insurance Agency* v. *Cole,* 87 Miss. 637, 40 So. 228; *State* v. *Lawrence,* 108 Miss. 291, 66 So. 747; *Postal Telegraph Co.* v. *Robertson,* 76 So. 562, 116 Miss. 204. (b) To special assessments: *Daley* v. *Swope,* 47 Miss. 369; *Cox* v. *Wallace,* 100 Miss. 525, 56 So. 461; *Jones* v. *Drainage District,* 102 Miss. 796, 59 So. 921. (c) To excise taxes: *Hattiesburg Grocery Co.* v. *Robertson,* 88 So. 4, 126 Miss. 34; *Enochs* v. *State,* 97 So. 534 (Miss.).

The decision made was predicated upon a demurrer, not on a full development of the facts requisite, so that if there is any possible state of case under which this act may be found constitutional, it is obligatory upon this

court to assume that condition to exist because an act of
the legislature raising revenue is not to be stricken down
save when void beyond a reasonable doubt, and then
only at the express instance of one whose right is trans-
gressed thereby. *Lamar Life Insurance Co.* v. *Jackson,*
95 So. 855, 132 Miss. 838.

Let us assume that all of the physical property, in-
cluding good will and going value, of the Lumber Min-
eral Company, was situated in Mississippi, with nothing
outside of the state except its domicile. The legislature
well knew it could not tax the shares of a corporation so
situated upon a basis different from that of a local cor-
poration. Both must be taxed alike. *Chalker* v. *Bir-
mingham, etc., R. R. Co.,* 249 U. S. 522; *Guano Co.* v. *Vir-
ginia,* 253 U. S. 412; *Insurance Co.* v. *Conn.,* 185 U. S.
366; *R. R. Co.* v. *Green,* 216 U. S. 417.

Under the Federal Constitution, therefore, when a
foreign corporation has all of its property located within
Mississippi though chartered by another state, it may be,
constitutionally, taxed on all of said property, and, in
addition thereto, upon its stock, when a Mississippi cor-
poration is taxed only on its property and not on its
stock.

We do not seek to exclude taxation of all corporate
property to the same extent as property owned by an
individual. Every character of property corporatively
owned is taxable when similar property of an individual
is taxed. But shares of a corporation doing business in
Mississippi with its property locally sitused, cannot be
constitutionally taxed both upon its physical property
and upon the shares as well. *Robertson* v. *Mississippi
Valley Co.,* 81 So. 800, 120 Miss. 169.

All of the property of a foreign corporation being sit-
uated in a foreign state from which the corporation as
such could not migrate, a resident of Mississippi ob-
tained an interest in such property so thus there taxed
by the sovereignty which created it but had his partici-
pation in such foreignly sitused property evidenced by

a certificate of ownership—a corporate stock certificate. That was in Mississippi wherein the corporation did no business. It was contended that state taxation in virtue of individual ownership of corporate shares in a foreign corporation whose entire property was extraterritorial, violated the Federal Constitution. *Hawley* v. *Maulden,* 232 U. S. 8, 58 L. Ed. 481; *Kidd* v. *Alabama,* 188 U. S. 730, 47 L. Ed. 669. But this power, though existent, need not be exercised when its exercise imposes double taxation—a most unjust and onerous burden.

Therefore, when Mississippi found no revenue was being paid upon foreign shares because of the intolerable burden that would arise from such taxation, and that the actual property representing these shares was sitused in a foreign state, and not, as such, taxable in Mississippi, in pursuance of a wise policy, the legislature recognized the equity of the situation as to those corporations which had no property of any kind in Mississippi, and imposed this privilege tax upon the right of a resident to own these certificates substantially equivalent to a stamp tax.

Our interpretation of this privilege tax act is that it applies solely and only to shares of stock owned by residents of Mississippi where there is no property in Mississippi of the corporation as such subordinate to state sovereignty and taxed *ad valorem,* but only to that type of corporation wherein the Mississippian owns an interest evidenced by a stock certificate in property possessed by an aggregate of individuals, a corporation sitused in a foreign state.

What is a nonresident corporation in the purview of this statute? We answer only a corporation that does no business in Mississippi and has no property subject to *ad valorem* taxes therein. All doubts are resolved in favor of the citizen and against the state in the construction of a privilege tax. *Johnson* v. *Oil & Refining Co.,* 108 Miss. 416; *Ex Parte Taylor,* 58 Miss. 478; *Wilby* v. *State,* 93 Miss. 767.

A nonresident, therefore, under this act, is one that does no business in Mississippi. This act must not be stricken down until, unless and except it is unconstitutional beyond a reasonable doubt. *Johnson* v. *Reeves,* 112 Miss. 227, 72 So. 925; *State* v. *Wheatly,* 113 Miss. 55, 74 So. 429.

The duty of the court is accurately expressed in *City of Jackson* v. *Mississippi Fire Insurance Co.,* 95 So. 848. *Securities Mutual Insurance Co.* v. *Prewitt,* 200 U. S. 246, 50 L. Ed. 1013, remains the law except as modified by *Terral* v. *Construction Co.,* 257 U. S. 729. Now with this absolute power to exclude, with the property of the foreign corporation fully taxed in its home state, it is objected that section 112 of the Constitution is operative to destroy this law. With the utmost deference, that is not true, and is demonstrably not true under the present decisions of this court.

Much stress will be placed upon two cases, in each of which we were counsel. *Thompson* v. *Kreutzer,* 112 Miss. 165, and *Thompson* v. *McLeod,* 112 Miss. 383, but these cases are readily distinguishable.

The Kreutzer case and the McLeod case had to do with realty irrevocably located in Mississippi, beyond the power of the legislature to otherwise provide. Land in Mississippi must always remain subject to the laws of Mississippi as property. The Lord when He made the earth gave it a position, and it is here held by His immutable command. But a share of stock evidencing ownership in a nonresident corporation has no *situs* fixed either by the law of God or the Constitution.

There is no mandate in the Constitution situsing shares of stock in foreign corporation without the physical property in Mississippi. The legislature has plenary power to regulate, and, in regulating, can exercise unlimited discretion. *City of Vicksburg* v. *Armour Packing Co.,* 24 So. 224; *Adams* v. *Colonial Mortgage Co.,* 82 Miss. 263; *Blackstone* v. *Miller,* 188 U. S. 428, 47 L. Ed. 188; *People* v. *Commissioners,* 23 N. Y. 224; Taylor on

Private Corporations, sec. 51, Page 28; *Securities Co.* v. *State,* 91 Miss. 195; *Jane* v. *Martinez,* 104 Miss. 208, 61 So. 177.

This is an excise upon the right of a foreign corporation to do business in Mississippi, because the distribution of its shares in Mississippi is clearly within the regulatory power of Mississippi in virtue of its sovereignty. *Harry T. Hall* v. *Geiger- Jones Co.,* 242 U. S. 538, 61 L. Ed. 480; *Caldwell* v. *Sioux Falls Co.,* 242 U. S. 559, 61 L. Ed. 493.

In short, it has been held that Mississippi may entirely exclude foreign corporations from its borders. *L. & N. R. R. Co.* v. *State,* 107 Miss. 579; *Bank* v. *Earl,* 13 Peters, 519, 10 L. Ed. 819; *Paul* v. *Virginia,* 8 Wall, 168.

So, having power to exclude, and being vested with supervisory discretion, it may exercise its sovereignty by the creation of an excise tax for the enjoyment of a right in Mississippi as to foreign property wherever Mississippi exercises no sovereignty and, in this aspect, the Kreutzer case and the McLeod case have nothing in common with the case at bar, or the statute struck down. *Enochs* v. *Robertson,* 97 So. 534, 128 Miss. 361; *In re Deseret,* 46 L. R. A. (N. S.), 791; *Hattiesburg Grocery Co.* v. *Robertson,* 88 So. 4, 89 So. 368, 126 Miss. 34.

The right to do business in Mississippi by a foreign corporation is a privilege, and that privilege is taxed, and unquestionably taxed, and has been the source of revenue from time immemorial. *Powell* v. *Calvert Mortgage Co.,* 112 Miss. 319, 73 So. 51.

Is this imposition upon the right to own stock in a foreign corporation which cannot come into Mississippi without the state's consent, a privilege tax? Unquestionably and undoubtedly, it is, and so being, thereby the right to tax can only be determined by demonstrating that under the guise of privilege taxation *ad valorem* direct tax has been imposed, and no such condition is demonstrable. The legislature surely did not intend to evade its responsibilities, and invalidate the Constitution by

assuming to do that which it had no right to do. See *Coca-Cola Co.*, 91 Miss. 677. As to *Dawson* v. *Kentucky Distilling Co. etc.*, 255 U. S. 288, 65 L. Ed. 638, note the decision in *Oliver Iron Mining Co.* v. *Lord,* 262 U. S. 171, 67 L. Ed. 930.

But, there is another conception. By the case of *City of Jackson* v. *Mississippi Fire Ins. Co.*, 95 So. 847, reviewing all preceding decisions, it has been firmly and finally settled that the legislature may exempt from taxation such property as it deems proper.

Substantially under these decisions, the Constitution of 1890 as to exemptions has been made exactly equivalent to the Constitution of 1869. That is to say, the court, at present, contrary to *Railroad Co.* v. *Adams,* 77 Miss. 194, recognizes as the controlling decision *Mississippi Mills* v. *Cook,* 56 Miss. 40.

In short, this court now concurs with WOODS, Chief Justice, and has departed from that which was established by Justice WHITFIELD in the majority opinion. Therefore Mississippi stands now with a legislature vested with precisely the same power as was vested in the legislature during the time of the Constitution of 1869, and under the Constitution of 1869, in the matter of exemptions, it was constitutional for the legislature to fix, raise and commute. *Bank* v. *Worrell,* 67 Miss. 47; *Board of Supervisors* v. *Gulf Coast Military Academy,* 89 So. 617; *Postal Tel.-Cable Co.* v. *Adams,* 71 Miss. 556, 14 So. 36; *Adams* v. *Bank,* 75 Miss. 701, 23 So. 395, and *Bank* v. *Adams,* 78 Miss. 732, 29 So. 400.

Was the right of the legislature to exempt this property from all taxation absolute and unconditional? Now if this right exists, namely, an absolute right, an unconditional right, of necessity, the greater will contain the less, therefore, with deference, the result is that the power to exempt, as now existing, embraces the power to partially exempt, or to commute. This tax might be taxed as a commutation tax, and supported on that predicate.

*Floyd & Easterling,* also for appellant.

The question sought to be presented to the court for decision is simply this: Are shares of stock held by a resident of this state in a foreign corporation taxable in this state? Sec. 112 of the Constitution.

Section 6878, Hemingway's Code, declares the law and policy of the state in regard to exemption from taxation, and the said section provides in the first paragraph that, "The following property, and no other, shall be exempted from taxation.

Section 6888, Hemingway's Code, declares that: "All taxable property brought into the state or acquired or held by any person before the first day of February shall be assessed and taxes thereon paid for the current year."

Section 6904, Hemingway's Code, providing for the publication of printed lists for taxpayers to be used by the assessors, contains the requirement that the taxpayer give in for taxes the "value of all shares or certificates of stock in any corporation, stock company or association, domiciled outside of the state."

Pursuant to the authority of chapters 134 and 135, Laws 1918, the state tax commission re-adopted this provision in the form promulgated by it. Section 6905, Hemingway's Code, further provides that this list shall have appended to it the oath of the taxpayer, and section 6906, Hemingway's Code, provides that the tax list of every person shall be made out on one of the printed lists and filled in with ink, etc.

It is therefore clear that the legislature clearly intended all personal property to be taxed except that, specifically exempted by statute, for an exemption is never presumed, but the burden is upon the claimant to establish it. *Morris Ice Co.* v. *Adams,* 75 Miss. 410, 22 So. 944; *Sturges* v. *Carter,* 29 L. Ed. 240; 2 Cooley on Taxation, 1404.

That shares of stock in a corporation, whether such corporation be domestic or foreign, can be taxed in the

hands of the owner has as a general proposition been too well settled to admit of serious discussion. Shares of stock are a species of personal property and as such are subject to the usual burden of taxation borne by other property. Apart from constitutional and statutory prohibitions there is nothing to prevent the state from tax·ing the corporation on its property and assets and also taxing the shares of stock in the hands of its stockholders. They constitute separate taxable entities and to tax each is not double taxation. 26 R. C. L. 184; *Farrington* v. *Tenn.*, 23 L. Ed. 228 (560); *Bradley* v. *Bauder*, 36 Ohio St. Rep. 28, 38 Am. Rep. 547; *Sturges* v. *Carter*, 29 L. Ed. 240; *Wright* v. *L. & N. R. R.*, 49 L. Ed. 167, Fletcher's Cyc. Corporations, 7, 8185; *Greenleaf* v. *Board of Review*, 184 Ill. 226, 75 Am. St. 168, 56 N. E. 295; *Kidd* v. *Alabama*, 47 L. Ed. 669; *Darnell* v. *Ind.*, 226 U. S. 390, 57 L. Ed. 267; *Hawley* v. *Malden*, 232 U. S. 158, Ann. Cas. 1916 C 842; *Judy* v. *Beckwith*, 137 Iowa 24, 15 Ann. Cas. 890, 15 L. R. A. (N. S.) 142; *Bacon* v. *Bd. State Tax Commrs.*, 126 Mich. 22, 86 A. S. R. 522, 60 L. R. A. 321; *Lee* v. *Sturges*, 46 O. St. R. 153, 2 L. R. A. 556; 37 Cyc. 757, and annotations thereto. See comprehensive note to *State Board of Equalization* v. *People*, etc., 58 L. R. A., 577, *et seq.; Coca-Cola Co.* v. *City of Atlanta*, 152 Ga. 558, 110 S. E. 730; 23 A. L. R. 1339. The case of *Robertson* v. *Miss. Valley Company*, is not authority against the taxation of shares of stock in a foreign corporation to a citizen of this state. 120 Miss. 159, 81 So. 7991.

All that was held by an evenly divided court was that a domestic corporation cannot be taxed on that portion of its capital stock which is invested in shares of the capital stock of another domestic corporation. However in regard to the liability for taxation of shares of stock in a domestic corporation it is urged and acquiesced in that in the case of *Simmons* v. *State*, 70 Miss. 485, 12 So. 477, this court construing pertinent statutes, held it not to be the intent and language of the laws of this state

to impose taxes on shares of stock in the hands of the owner in a domestic corporation. This decision was based entirely on a consideration of the statutes of the state and merely held that in contemplation of our statutory scheme of taxation of a domestic corporation the corporation itself paid the tax, computed not on the value of its real and personal tangible property alone, but on the value of its outstanding capital stock as augmented in value by its surplus and undivided profits. Section 6901, Hemingway's Code, is the present statutory provision relating to this subject.

LOCATION OF PROPERTY IN THIS STATE OF FOREIGN CORPORATION CREATES NO EXEMPTION OF RESIDENT-OWNED SHARES. We apprehend that counsel representing an opposing view will, when driven by the overwhelming weight of authority on this general proposition, concede that the conclusion is inescapable that under our Constitution and statutes stock in a foreign corporation is unquestionably taxable in the hands of a resident of this state, but that an exception exists in favor of such stock when a part of its corporate property is located in and taxed in this state, and that such a state of facts exists in this case. However, an effort to engraft such 'an exception upon the expressed laws of this state is no less violative of the tenets of sound construction quoted above, than would be the whole contention of which the latter is but a part.

Lest we be swayed by an argument based on an analogy to domestic corporations and the familiar cry of a denial of equal protection of the laws it is well to revert to the holding of the supreme court of the United States in *Kidd* v. *State of Alabama,* 47 L. Ed. 669, where the court unequivocally stated that the equal protection of the laws is not denied by the provision of the Alabama statutes taxing foreign stock when stock of a domestic corporation is exempted. See *Coca-Cola Co.* v. *City of Atlanta,* 152 Ga. 558, 110 S. E. 730, 23 A. L. R. 1339; *Commonwealth* v. *Walsh's Trustee,* 106 S. W. 240.

In 7 Fletcher's Cyc. Corporations, 8080, is found a very clear and interesting discussion of the question of the *situs* for purposes of taxation of the franchise and other intangibles of a foreign corporation. See, also, *Foster-Cherry Commission Co.* v. *Caskey,* 66 Kan. 600, 72 Pac. 268.; *Com.* v. *Standard Oil Co.,* 101 Pa. St. 119; *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 196, 29 L. Ed. 158; *Pullman Palace Car Co.* v. *Penn,* 141 U. S. 18, 35 L. Ed. 613; *St. Louis* v. *Wiggins Ferry Co.,* 11 Wall. (U. S.) 423, 20 L. Ed. 192.

The above argument and authorities cited demonstrate beyond doubt the soundness of the proposition that no foreign corporation doing business in this state, however much or little, can be legally taxed on its entire property in this state, and this is true regardless of whether such foreign corporation has its interest invested exclusively in this state, together with its sole place of business. It therefore follows that it cannot claim that it is, or can be, taxed the same as a domestic corporation, for the simple reason that its intangible property and franchise have a *situs* at its legal domicile and not at the actual place of business of the corporation.

This should refute any argument addressed to this court asking it to declare any policy in regard to taxation that will be discriminatory as against domestic corporations. If such foreign corporation as above referred to should go so far as to pay *ad valorem* taxes on its real property in this state and all its tangible property, there yet remains an important and unknown element of value not taxed by this state, as its capital stock, used in sense of including the value of both tangible and intangible property under the authorities cited above cannot be. taxed.

FRANCHISE OF DOMESTIC CORPORATIONS MUST BE TAXED IN MISSISSIPPI. That the franchise of a corporation is required to be taxed under the laws and Constitution of this state has been often established by this court. *People's Warehouse Company* v. *Yazoo City,* 97 Miss.

500, 52 So. 481; *Simmons* v. *State,* 70 Miss. 485, 12 So. 477; *Robertson* v. *United States Nursery Co.,* 83 So. 307; *Adams* v. *Bullock,* 94 Miss. 27.

As to the difference between the value of tangible corporate holdings and the value of the capital stock on the market, the court held that this excess value represented the value of the franchise to be a corporation, and that this value of the franchise might be taxed just as the value of any other corporate property.

In sustaining this proposition the court quoted with approval from *Commonwealth* v. *Cary Improvement Co.,* 98 Mass. 19. *Adams Express Co.* v. *Ohio,* 166 U. S. 185, 17 Sup. Ct. 604, 41 L. Ed. 965.

The court cited notes to the case of *Louisville Tobacco Warehouse Co.* v. *Commonwealth of Kentucky,* 106 Ky. 165, 49 S. W. 1069, 57 L. R. A. 33, in holding that a franchise is property and as such taxable, and though admitting that there was a difference of opinion in some jurisdictions as to the nature of the property, said: "We adopt the view of such courts as hold that a franchise of this character is personal property and taxable as such." After thus definitely committing itself on this proposition the Mississippi supreme court cited the case of *Panola County* v. *Carrier & Son,* 89 Miss. 277, 42 So. 347, for the purpose of showing how corporations should be taxed.

SUPREME COURT OF THE UNITED STATES ON THE TAXABILITY OF SUCH SHARES UNDER FEDERAL AND STATE CONSTITUTIONS. *Wright* v. *L. & N. R. R. Co.,* 49 L. Ed. 167; *Sturges* v. *Carter,* 29 L. Ed. 240; *St. Louis Southwestern R. Co.* v. *Arkansas,* 59 L. Ed. 265; *Kidd* v. *Alabama,* 188 U. S. 730, 47 L. Ed. 669, aff'g; *State* v *Kidd,* 125 Ala. 413, 28 So 480.

EXEMPTIONS MUST BE EXPLICIT. *Farrington* v. *Tenn.,* 24 L. Ed. 558.

PERPLEXITIES OF ADMINISTRATION INCIDENT TO JUDICIAL CONSTRUCTION SOUGHT BY APPELLEE. If the court should

sustain any suggestion of appellee's counsel and engraft into our organic scheme of corporate taxation an exception to the effect that stock in a foreign corporation is not taxable when it has all of its tangible personal property, and real estate in this state then the administrative laws of this state will be burdened with perplexities so great and numerous as to be tantamount to their complete nullification.

Frankly we should be glad indeed to see chapter 129, Laws 1924, upheld, if possible, but as stated at the outset of our brief we are unable to conclude to our satisfaction that it is valid. In this condition of things we respectfully show to this court that it should construe our existing statutes as unconditionally imposing a uniform *ad valorem* tax on this class of investment as a whole, and thereby permit the legislature to change the law, if it sees fit to modify the conditions under which this stock may or may not be taxable. At the same time the same legislature could provide necessary administrative machinery for the determination of all the details incident to such a change. Frankly, we see no useful purpose or policy to be subserved in changing any feature of the law, if our interpretation is upheld.

It has been the privilege and duty of the writers of this brief to review statutory provisions of practically all the states on the subject involved. A compilation of such laws may be found in The Corporation Manual, published by "The Corporation Trust Company of New York" and may be found in the state library. It may be true that Mississippi has not provided the statutory conditions pertaining to the exemption of foreign stock, as found in some states. At the same time its laws are on a parity with many of the states where abounds a large part of the capital of the nation.

In spite of doubts and propaganda sometimes to the contrary we maintain that the corporation laws of the state of Mississippi are friendly and inviting to capital, and that under its expressed scheme of taxation favor-

able to domestic corporations no one should be heard to complain when taxed with the ownership of shares in a foreign corporation purposely expatriated for reasons of self-convenience to obtain some privilege or immunity for which it pays nothing to this state in return for the governmental protection it enjoys. To such a corporation the courts of the state are open, the constabulary of the state for the protection of its property always at hand, and moreover the acquisition and exploitation of our virgin resources open to their enjoyment and profit. As was said in one of the authorities we read in our research: Under such circumstances the owner of such stock can change his residence, or change his investment, or, more properly, change the domicile of his company and enjoy the beneficent laws intended for the corporate children of the state.

A foreign corporation pays no annual franchise tax to this state, as in most states. It makes no contribution to the burdens of government, except as it pays *ad valorem* taxes on the mere physical property having a taxable *situs* herein. As a policy bent upon building up the state in respect to its invested capital it occurs to us that of paramount consideration is a judicial clarification of our existing revenue laws as a forerunner to appropriate legislation where necessary. Of great importance is the question submitted here. From the consideration of policy we submit that a strict construction of our statutes will redound to the benefit of our state. It will keep capital at home and take the premium off foreign incorporation of our local industies. It will make more reciprocal the relations between government and property. It will foster patriotism and civic pride. It will confine controversies between our citizens and corporations in this state to the judicial tribunals of our state. It will remove unjust discrimination against domestic corporations, which assume their full share in the burdens of government.

*Watkins, Watkins & Eager,* for appellee.

CHAPTER 129, MISSISSIPPI LAWS OF 1924, UNCONSTITUTIONAL, AND THEREFORE UNENFORCEABLE. In support of the foregoing proposition we cite *Thompson, Auditor,* v. *Kreutzer,* 112 Miss. 165; *Thompson, Auditor,* v. *McLeod,* 112 Miss. 383; *Crittendon* v. *Town of Booneville,* 92 Miss. 277; *Murray* v. *Lehman,* 61 Miss. 283; *Adams* v. *Mississippi State Bank,* 75 Miss. 701.

APPELLEE'S SHARES OF STOCK IN THE LUMBER-MINERAL COMPANY WERE NOT SUBJECT TO ASSESSMENT FOR AN AD VALOREM TAX, BECAUSE ALL THE PROPERTY OF THE FOREIGN CORPORATION, WHETHER REAL OR PERSONAL WAS SITUATED IN THE STATE OF MISSISSIPPI, ASSESSED FOR TAXATION AS THE PROPERTY OF OTHER PERSONS, AND TAXES PAID THEREON IN AN AMOUNT IN THE AGGREGATE EQUAL TO ITS CAPITAL STOCK. The question arises under the second count in appellant's declaration, as to whether or not shares of stock in a foreign corporation doing business in the state of Mississippi, where all of its real and personal property is situated in the state and taxes paid thereon, may be assessed under the laws and statutes of the state of Mississippi to the individual owner thereof.

It must be borne in mind that the question is not exactly one of exemption from taxation but the question involved is as to whether or not property which has been taxed in one form or species is subject to taxation under a different guise. Some of the judges in the adjudicated cases, to which we will refer, use the word "exempt," but this term is in no sense accurate.

Our position is that property in Mississippi is taxed but once. Double taxation violates the fundamental law of the state of Mississippi, and where the property of the corporation has been taxed, then, for all substantial purposes section 112 and section 181, of the Constitution, as well as the statutes passed in pursuance thereof to put into effect the constitutional mandate, have been fully complied with. This distinction we wish to impress upon the mind of the court at the threshold of the argument and it must be borne in mind. In a certain sense the

shares of stock in the hands of the owner are separate property from that of the corporation; but that is true only in a theoretical sense; for all practical and substantial purposes, they are the same. 7 R. C. L., par. 277, subject "Corporations."

The shares of stock have no value, except for the property back of them owned by the corporation. Some law writer has said that a corporation is like an individual—it comes into this world naked, such property as it may acquire being the result of contributions to its capital stock made by its stockholders. Taxes are paid upon the property of the corporation. This money comes out of the stockholders, because the value of their shares is proportionately diminished. A taxation of the shares of stock to the stockholder produces the same and no other result.

In studying the subject, we find a great deal of confusion in the decisions. When properly analyzed, there is very slight contrariety of views upon the essential legal principles underlying this case. We find it stated in many cases that the shares of stock are one thing and the capital stock and property of the corporation an entirely separate and distinct thing, and that both may be taxed in the same jurisdiction. The proposition, however, is subject to analysis and scrutiny and when these are exercised it will be found that in some states the legislature explicitly required that the property of the corporation, as well as the shares of stock, be separately assessed, and the supreme court of the United States has held that such statutes when enforced by the courts of the state, do not violate the Constitution of the United States. In other words as far as the courts have gone is to hold that in certain states such double taxation may legally exist, and that such form of double taxation does not violate the Federal Constitution; and when this is stated, it will be found that the opinions amount to nothing more.

For instance, take the case of *Sturges* v. *Carter*, 114 U. S. 511, 29 L. Ed. 240, where the rule is announced that

a state might, without violating the Federal Constitution, tax both.  However, in the case of *State of Tennessee* v. *Whitworth*, 117 U. S. 129, 29 L. Ed. 830, the supreme court of the United States pointed out that, while this thing might be done, such method of taxation was harsh, and should only be adopted when the statutes were not susceptible of any other construction.

It must be borne in mind that under the Federal Constitution double taxation is not prohibited.  *Sturges* v. *Carter, supra.*  Discrimination however, is prohibited.  *Sellover, Bates & Co.* v. *Walch*, 226 U. S. 112, 57 L. Ed. 146; *Gulf R. R. Co.* v. *Ellis*, 165 U. S. 150, 41 L. Ed. 666; *Dobyns* v. *City of Los Angeles*, 195 U. S. 223, 49 L. Ed. 169; *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540, 46 L. Ed. 679; *McFarland* v. *Sugar Refining Co.*, 241 U. S. 79, 60 L. Ed. 899; *Greene v. L. R. Co.*, 244 U. S. 499, 61 L. Ed. 1280; *Union Pacific R. R. Co.* v. *Board of County Commissioners*, 247 U. S. 282, 62 L. Ed. 1110; *United States* v. *Board of County Commissioners*, 251 U. S. 128, 64 L. Ed. 184.

In the cases cited from state courts holding that the shares of stock in a corporation are separate and distinct things for taxation purposes, and that the shares are assessable to the |shareholder, notwithstanding the fact that the corporation has paid taxes on the property imparting anything of value to the stock; in other words, there are cases where the state courts, dealing with their own statutes, hold that as to domestic corporations this method of double taxation is applicable and enforceable, and this rule will be found in a number of states.  As we have indicated to the court, however, the presumption is always the other way, and such construction of statutes should be avoided, if possible, and only resorted to where the terms of the statute involved will admit of no other construction.  1 Cooley on Taxation (4 Ed.), p. 485.

This court has invariably held that such shares of stock are not taxable as to domestic corporations.  But the

important thing which we wish to call your Honor's attention to is the fact that when you come to the question of whether or not you will treat the shares of stock as one thing and the property of the corporation as another, the matter is no longer open in Mississippi, but has been closed, and is now precluded by a long line of decisions. An argument to this court on behalf of the appellant based on the theory that recovery should have been had because the property of the corporation and the stock of the shareholder are separate, distinct and taxable things is simply a re-presentation to this court of a proposition law which it has long ago declined to adopt. *State* v. *Simmons,* 70 Miss. 485; *Robertson, Rev. Agt.,* v. *K. C. Lumber Co.,* 77 So. 246; *Robertson, Rev. Agt.,* v. *Miss. Valley Co.,* 77 So. 253.

The whole question was again presented to this court and exhaustively argued in the case of *Robertson, Revenue Agent,* v. *Mississippi Valley Company,* 81 So. 799, and this court adhered to its former ruling, declining for taxation purposes to treat the property of the corporation and the capital stock as distinct things. See, also, *Panola County* v. *Carrier,* 92 Miss. 148.

This court has also in the following cases announced that a double taxation violated the public policy of the state. *Thompson* v. *Holmes County,* 67 Miss. 75; *Bank of Oxford* v. *Oxford,* 75 Miss. 504; *State* v. *Simmons,* 70 Miss. 485; *Railroad Company* v. *Adams,* 90 Miss. 599.

THE RULE IS APPLICABLE TO SHARES OF STOCK IN A FOREIGN CORPORATION. We think we have demonstrated to the court that in the state of Mississippi it is thoroughly settled that, as for taxation purposes, to assess both the property of the corporation and the shares of stock to the stockholders would be double taxation. Such is the law in Mississippi.

This court has, in a line of decisions which have become rules of property, taken this view of the matter. And not only that but the statutes which your Honors construed in *State* v. *Simmons, supra,* have been codified

and re-enacted subsequent to the construction adopted by the court in *State* v. *Simmons,* giving legislative construction to the opinion of the court.

In *Hammer* v. *Yazoo Delta Company,* 103 Miss. 349; *Henry* v. *Henderson,* 103 Miss. 348; *Shotwell* v. *Covington,* 69 Miss. 735; *Weatherby* v. *Roots,* 72 Miss. 355; *Hay* v. *Hay,* 93 Miss. 732, 136 A. M. S. 548, 25 L. R. A. (N. S.) 182-N, this court has held that where a state statute has been construed by this court and is on codification of the laws re-enacted without material change the previous construction is controlling. The construction adopted by this court has been codified and re-enacted (Mississippi Code 1906, sec. 4267).

There may be some conflict in the authorities in the various states as to whether or not a domestic corporation should be assessed with its property and the shareholders with their stock, but there is no conflict of authority upon the point that in states where domestic shareholders are not subject to *ad valorem* taxes on their shares, in such states the question is almost uniform; in fact, we have not found a single dissenting opinion. It is held, almost without contrariety of view, that under such circumstances then the shareholder in a foreign corporation doing business in the state where its property is situated in the state and taxes paid thereon, is not liable for an *ad valorem* tax on the shares of stock. The cases make no difference on the question in respect to a shareholder in a domestic and a foreign corporation. We present the question herein that no such distinction could be made, but the fact remains, as we will demonstrate, that the question always turns on the construction which the highest court of the state puts on its own statutes in respect to the question as to whether or not the property of the corporation is taxable to it and the shares to the shareholder.; and we think that the rule cannot be controverted that in states like Mississippi where, under the laws, statutes and decisions, shares of a domestic corporation are not assessed to the stockholders,

the same rule applies to the shareholders in a foreign corporation, where its property is in the state and taxed.

See the following text books: Cooley on Taxation (4 Ed.), secs. 978 and 979; 26 R. C. L., 158. We now propose to give the court the adjudications of the different states upon the subject. Arkansas: *Dallas County* v. *Banks,* 113 S. W. 37. California: *Burke* v. *Badlam,* 57 Cal. 594; *City & County of San Francisco* v. *Fry,* 63 Cal. ———. Colorado: *Denver* v. *Hobbs' Estate,* Ann. Cas. 1916, 823. Iowa: *Bennett, County Treas.,* v. *Finkbine Lbr. Co.,* 198 N. W. 1. Kansas: *Patterson* v. *Board of Comm'rs.,* 109 Pac. 790. Kentucky: *Commonwealth* v. *Bedham,* 106 S. W. 247; *Commonwealth* v. *Walsh, Tr.,* 117 S. W. 398; *Commonwealth* v. *Fidelity Trust Co.,* 143 S. W. 1037; *Whitaker* v. *Brooks,* 13 S. W. 355. Louisiana: *Chassahoil et al.* v. *Board of Assessors,* 45 So. 604; *Ficklin* v. *City of New Orleans,* 85 So. 330. Maine: *East Livermore* v. *Livermore Falls T. & B. Co.,* 13 A. & E. Cas. 631. Michigan: *Stroh* v. *Detroit,* 90 N. W. 1029; *Voorheis, Pros. Atty.,* v. *Walker,* 198 N. W. 994. New Jersey: *State* v. *Ramsey,* 24 Atl. 445; *Trenton* v. *Standard Fire Ins. Co.,* 73 Atl. 606. Oklahoma: *Board of Comm'rs.* v. *Ryan, County Treas.* Ohio: *Hubbard, County Treas.,* v. *Brush,* 55 N. E. 829. Pennsylvania: *Commonwealth* v. *Falls Brook Coal Co.,* 26 Atl. 1071. Tennessee: *Tenn. Fert. Co.* v. *McFall et al.,* 163 S. W. 806; *Sloan* v. *City of Columbia,* 232 S. W. 663. Texas: *Gillespie, Tax Collector* v. *Gaston,* 3 S. W. 248. Vermont: *Foster* v. *Stevens,* 22 Atl. 78. Washington: *Ridpath* v. *Spokane County,* 63 Pac. 260. West Virginia: *State* v. *Graybeal,* 55 S. E. 598. Wisconsin: *State* v. *Wisconsin Trust Co.,* 144 N. W. 290. Policy of United States Government to permit but one form of taxation. Same policy pursued Mississippi income tax law. Executive construction by various departments of state government the same. Forms of taxation to which foreign and domestic corporations subjected in carrying on business in Mississippi.

It would be well at this point to stop and draw a rule from the various cases which have been cited. The result of our investigation was that no state in the Union so construed its statutes as to impose an *ad valorem* tax on the property of either a domestic or foreign corporation, where the property of the latter was situated in the state and taxed, or subject to taxation, and at the same time assess the shares of stock to the shareholders.

We stated that the question did not depend so much upon the power of the state to do so, in so far as the fourteenth Amendment to the Constitution of the United States was concerned, but rather rested upon the broad principle that double taxation was abhorrent, and prohibited by the laws and Constitution of most of the states in the Union, and that such form of taxation was considered double taxation, and should only be resorted to in obedience to the mandates of a positive and unambiguous statute, susceptible of no other construction.

There are some cases holding that where substantially all the property of the foreign corporation is situated out of state shares of stock are subject to assessment, though there are a number of states where it is held that if any portion of it is situated within the state the shares of stock are not so assessable. The conflict in the authorities range around these two points. (a) Where all the property of the foreign corporation is situated out of the state; (b) Where only a very small portion of it is situated in the state.

But when we approach the question involved in this record, that all the property of every kind owned by the corporation is situated in the state and taxed, then counsel have not cited a single case where, under such facts and circumstances, the supreme court of any state has so construed its statutes as to impose an *ad valorem* tax upon the shareholders.

Counsel direct the attention of the court to section 6904 of Hemingway's Code of the state of Mississippi, which purports to provide a form to be furnished by the as-

sessors to the taxpayer for listing his property, and in which the following language is contained: "Value of all shares or certificates of stock in any corporation, stock company, or association, domiciled outside of this state."

It would be appropriate in this connection to call your Honor's attention to the fact that in the brief of counsel for appellant in *State* v. *Simmons,* 70 Miss. 485, counsel for appellant makes the following statement: "Section 484, Code 1880, which is section 3751, Code 1892, providing for assessment rolls, requires that there shall be a heading for 'amount of shares in any corporation or company.'"

Yours honors held that the provision had no application to a domestic corporation, where the property was situated in the state and taxes paid thereon. So with the provisions quoted from section 6904 of Hemingway's Code. There is nothing in the statute which says imperatively that all shares of stock in a foreign corporation shall be assessed. The assessor is merely required to obtain the information by furnishing an appropriate list.

Again counsel for appellant call attention to section 6888 of Hemingway's Code, which is in the following language: "All taxable property brought into the state, or acquired, or held by any person before the first day of February, shall be assessed, and taxes paid thereon for the current year."

This identical provision was contained in the Code of 1880, construed by the court in *State* v. *Simmons,* and your Honors held that the section was fully complied with by a domestic corporation where its property was situated in the state and taxed. Keeping in view the justice of equality of taxation, and assuming the legislative will to be that no other result shall be reached by the plan it provides, the courts have uniformly construed revenue acts, unless unequivacally and clearly expressing a different purpose, as intended to levy a single tax only upon the same property, even though the words of the law would

ordinarily and naturally bear a broader and more general meaning. *Bank* v. *Nashua,* 46 N. H. 389; *Smith* v. *Burley,* 9 N. H. 423.

On the rule of construction to prevent double taxation, many decisions are collected in Cook on Stock and Stockholders, section 568, Note 1.

It is claimed that this corporation may have a franchise of some value; that the franchise is situated outside of the state, not taxable in Mississippi and that, therefore, the shareholders should be assessed with the stock. It is well settled that the franchise of a corporation is taxable whenever it is used and exercised, and, therefore, if this corporation, as is shown in the declaration, owns property nowhere except in Mississippi, it may be assumed that it carries on business nowhere else, and that every franchise which it exercises is carried on in the state of Mississippi. This being true, the franchise is taxable in the state of Mississippi.

In the case of *Adams Express Co.* v. *Ohio,* 166 U. S. 185, 41 L. Ed. 965, the supreme court of the United States held that the franchise of the Adams Express Company, a New York corporation, which was doing business in the state of Ohio, could be assessed for *ad valorem* taxes in the latter state.

In the following cases, it is held that a corporate franchise is of value, and taxable wherever the corporation is engaged in exercising such franchise powers: *Cosmopolitan Power Co.,* C. C. A. 137 Fed. 862; *London Bank* v. *Block,* 117 Fed. 905; *Irrigation Co.* v. *Merced* (Cal.), 84 Pac. 288; *Rhode Island Hospital* v. *Tax Assessors,* (R. I.), 55 Atl. 879; *Southwestern Tel. Co.* v. *San Antonio* (Tex.), 73 S. W. 861; *Union Transit Co.* v. *Lynch,* 55 Pac. 642.

Counsel contend that the appellee should be assessed with the shares of stock in the foreign corporation because a foreign corporation itself is not assessable with any capital stock; that the state of Mississippi cannot assess the capital stock of a foreign corportion, it being

confined to an assessment of its property. This court has never decided that a foreign corporation, which has its principal office in the state of Mississippi, where all the property is situated in the state of Mississippi, where all the business it carries on is in the state of Mississippi, is not assessable in the state of Mississippi with its capital stock, deducting therefrom its visible property, as a domestic corporation is. That may be true. We do not find it necessary to controvert the point; but, as applied to the effort in this case, there are a number of obvious replies.

The record in this case shows that all the property which the corporation owns is situated in the state of Mississippi, and that it is assessed with property for an amount in the aggregate which equals the full value of its capital stock.

Your honors might ask the question, why would a business man in Mississippi engage in business under a foreign charter? Why not take out a domestic charter? And, in view of the attitude which we occupy, the question would require a frank answer.

(a) The corporation laws of the state of Mississippi have not been changed since the Code of 1892, and, therefore, have not kept pace with the commercial development of this country. Under the statutes of the state of Mississippi there is no authority for dividing shares of stock into classes; there is no authority for vesting the management of the corporation in the hands of certain shareholders; there is no provision for preferring one class of shareholders over another. A man may wish to give members of his family, or to employees, a certain class of stock, and, at the same time reserve an entirely different class for himself which would have the management and control of the corporation. No public policy is involved; nobody is interested, except the parties. The humanitarian method in carrying on business, and progressive commercial life, require charters of this character. It is necessary, therefore, that a foreign charter

be obtained. The parties obtaining them have no desire to violate either the law or the public policy of the state; they are honorable, upright people, contributing to its moral and material welfare; contributing in a very substantial manner to the support of the Nation, the state, and all of its subdivisions.

(b) The taxation of a foreign corporation is probably more simple. A foreign corporation pays exactly the same taxes upon its property which an individual would pay, and, no other. Section 181 of the Constitution states the property of all private corporations for pecuniary gain shall be taxed in the same way, and to the same extent, as the property of individuals. There is no element of property which a foreign corporation would own in Mississippi which would be liable to taxation just as if the property belonged to an individual.

If section 6878, Hemingway's Code, section 6888, Hemingway's Code, section 6904, Hemingway's Code, section 6905, Hemingway's Code, or either of them, shall be construed by this court as to justify or require the shares of stock involved in this suit to be assessed to the appellee, or so as to permit a recovery therefor, then such statutes, and each of them, violate section 14 of the bill of rights of the Constitution of the state of Mississippi, as well as the Fourteenth Amendment to the Constitution of the United States, for that by reason of such construction the appellee would be deprived of his property without due process of law, and would be denied the equal protection of the law.

Argued orally by *Garner W. Green, Earl Floyd,* and *L. F. Easterling,* for appellant, and *W. H. Watkins,* for appellee.

Cook, J., delivered the opinion of the court.

The appellant, as sheriff and tax collector of Covington county, instituted this suit in the circuit court seek-

ing to recover of and from the appellee taxes alleged to be due by him as a resident owner of ten shares of the capital stock of the Lumber-Mineral Company, a corporation incorporated and existing under the laws of the state of Maine, but having its place of business in Covington county, Miss. The declaration was framed in two counts. In the first count it is sought to recover the privilege tax imposed under chapter 129, Laws of 1924, and also to recover the penalty of twenty-five dollars per share provided by said act for a failure to return said shares for assessment, while in the second count delinquent *ad valorem* taxes for the year 1923 were sought to be recovered against the owner of this stock in a foreign corporation. There was a separate demurrer to each count in this declaration, and from a judgment sustaining these demurrers, this appeal was prosecuted.

The demurrer to the first count of the declaration challenged the constitutionality of chapter 129, Laws of 1924, on the ground that the privilege tax sought to be imposed thereby on citizens of the state of Mississippi for ownership of stock in foreign corporations is in effect a property tax, and consequently violates the uniformity clause of section 112 of the Constitution of the state.

Section 112 of the Constitution of 1890 reads as follows: "Taxation shall be uniform and equal throughout the state. Property shall be taxed in proportion to its value. The legislature may, however, impose a tax *per capita* upon such domestic animals as from their nature and habits are destructive of other property. Property shall be assessed for taxes under general laws, and by uniform rules, according to its true value. But the legislature may provide for a special mode of valuation and assessment for railroads, and railroad and other corporate property, or for particular species of property belonging to persons, corporations, or associations not situated wholly in one county. But all such property shall be assessed at its true value, and no county shall be denied the right to levy county and special taxes upon such as-

sessment as in other cases of property situated and assessed in the county."

The provisions of section 1, 2, and 3 of chapter 129, Laws of 1924, are, respectively, as follows:

"Section 1. That a privilege tax of one-half of one *per centum* upon the right of residents of Mississippi to own each and every share of the capital stock of non-resident corporations, stock companies, associations or trust estates, organized and conducting business for profit is hereby imposed and assessed; the said privilege tax to be collected at the time and in the manner that other privilege taxes are collected, to be computed upon a basis of the actual market value of said stock at the time said shares shall be returned for assessment under the law; provided, that in each and every case the par value of said stock shall be taken as *prima-facie* evidence of the actual value thereof; and where said stock has no par value, then said stock shall *prima facie* for the purpose of assessment be valued at one hundred dollars per share.

"Sec. 2. That said shares of the capital stock of said nonresident corporations, stock companies, associations or trust estates, organized and conducting business for profit, owned by resident citizens of the state of Mississippi, be and the same is hereby exempted from *ad valorem* taxation in the state; the said privilege tax imposed by section 1 of this act being in lieu of *ad valorem* taxation.

"Sec. 3. That whenever any owner of said capital stock of said nonresident corporations, stock companies, associations or trust estates, organized and conducting business for profit shall fail to return said shares of capital stock for assessment of said privilege tax, the said owner shall forfeit to the state the sum of twenty-five dollars per share of said stock owned as a penalty for said failure, for each year he fails to return said stock for taxation."

While the act under review denominates the tax im-

posed as a privilege tax on the right of residents of Mississippi to own shares of the capital stock of nonresident corporations, it cannot be doubted that the tax exacted is not an excise or privilege tax, and that it operates, and can only operate, as a tax on property. In the case of *Thompson* v. *Kreutzer*, 112 Miss. 165 72 So. 891, the court had under consideration a similar question, and the language of Chief Justice SMITH in that case is peculiarly applicable to, and is decisive of, the question here presented. In that case the court said:

"In a strict legal sense, 'property' (from the Latin word *proprius*, meaning belonging to one; one's own) is synonymous with the 'right of ownership' and means one's exclusive right of possessing, enjoying, and disposing of a thing. . . . In order that a thing may be owned, some one must, of course, have a right to the ownership thereof. A tax on a thing is a tax on all its essential attributes; and a tax on an essential attribute of a thing is a tax on the thing itself. So that, a tax on a thing owned is necessarily a tax on the right of owner-ship thereof; and a tax on the right of ownership of a thing is necessarily a tax on the thing itself. No definition of property can be framed which does not include the right of ownership. Consequently, no tax can be imposed on the right of ownership which is not also a tax on property."

To the same effect is the holding of the court in the case of *Thompson* v. *McLeod*, 112 Miss. 383, 73 So. 193, L. R. A. 1918C, 893, Ann. Cas. 1918A, 674. Section 112 of our Constitution requires that "taxation shall be uniform and equal throughout the estate," and that "property shall be taxed in proportion to its value," and it seems clear that the tax imposed by the act here under review operates necessarily as a tax on property and not as a privilege tax, and that it violates section 112 of the Constitution, and that the court below was correct in holding this act unconstitutional and void.

The second count of the declaration seeks to collect delinquent *ad valorem* taxes for the previous year, the

same having been assessed against the appellee as an additional assessment. In support of the action of the court below in sustaining the demurrer to this count, the appellee contends that his shares of stock in the Lumber-Mineral Company "were not subject to assessment for an *ad valorem* tax, because all the property of this foreign corporation, whether real or personal, was situated in the state of Mississippi, assessed for taxation as the property of other persons, and taxes paid thereon in an amount in the aggregate equal to its capital stock." The pleadings, however, do not present that state of facts, and the question as limited and presented by counsel for the appellee does not arise. The declaration avers the ownership of the shares of stock of a foreign corporation by the appellee, the failure of the appellee to return these shares of stock for assessment, the assessment thereof by the sheriff and tax collector as an additional assessment, and the failure and refusal of the appellee to pay the taxes so assessed, and then avers that the defendant, appellee, "asserts" that all the tangible property of the corporation is located and taxed in this state. This mere recital of an alleged claim or defense of the appellee was mere surplusage and wholly immaterial, and is not an averment of the existence of a fact which is admitted by the demurrer. A demurrer only admits facts that are well pleaded, and does not admit mere recitals of conclusions, either of fact or of law. Upon the record now before us, there is no showing that all or any part of the tangible property of this corporation is located or taxed in this state, and consequently the questions of whether or not shares of stock of a foreign corporation owned by a resident of this state are exempted or rendered immune from taxation, by reason of the fact that the tangible property of the corporation is located and taxed in this state, or whether or not, in fixing the valuation of such stock for purposes of taxation, there may be deducted from the real value of the stock the aggregate value of such tangible property, are not presented for de-

cision, and upon those questions we express no opinion whatever. The only question presented for decision by the averments of this declaration and the admissions of the demurrer is whether or not, under the Constitution and statutes of this state, the shares of stock in a foreign corporation are in any event, taxable in the hands of a resident holder and owner.

In the consideration of this question, it may be well to state certain general principles which appear to be established by authority. It is well settled that a state has the power to tax shares of stock of a foreign corporation which are owned by residents of the state. In 37 Cyc. 864, the rule is announced in the following language:

"Each state has the right and power to tax its own resident citizens on shares of stock in foreign corporations owned and held by them, the stock having its *situs* at the place of the owner's domicile, and this right is not affected by the fact that the stockholder may have been taxed upon the same stock in another state. This rule also applies even where the rule in regard to domestic corporations is that the corporation shall be taxed on its capital or property and that this shall relieve the stockholders from taxation on their shares; and regardless of whether the foreign corporation pays taxes on its capital or property in the foreign state or not."

In 26 R. C. L., section 129, p. 158, the doctrine is announced that—"There is a clear distinction between the capital stock of a corporation and its shares of stock in the hands of individual stockholders, so that the taxation of the one property is not the taxation of the other, and it is well settled that the property of shareholders in their shares, and the property of the corporation in its capital stock, are distinct property interests, and where that is the clearly expressed legislative intent both may be taxed. . . . It is equally well settled that a tax on the property of a corporation and a tax on the shares of stock in the hands of the individual stockholders, though in a sense double taxation, is not unconstitutional on that account."

To the same effect are the cases *Shelby County* v. *Union Bank,* 161 U. S. 149, 16 S. Ct. 558, 40 L. Ed. 650.; *Bank of Commerce* v. *Tenn.,* 161 U. S. 134, 16 S. Ct. 456, 40 L. Ed. 645; *Rogers* v. *Hennepin County,* 240 U. S. 184, 36 S. Ct. 265, 60 L. Ed. 594; *Sturges* v. *Carter,* 114 U. S. 511, 5 S. Ct. 1014, 29 L. Ed. 240; *Denver* v. *Hobbs' Estate,* 58 Colo. 220, 144 P. 874, Ann. Cas. 1916C, 863, and note thereto appended.

In 26 R. C. L., section 155, p. 184, it is said: ''An individual may be taxed in the state in which he lives on shares of stock in either domestic or foreign corporations, and a state may tax shares of stock in domestic corporations owned by nonresidents. . . . A stockholder has no constitutional right to a deduction from the valuation of the shares in his hands for the purposes of taxation on account of real estate in which part of the capital of the corporation is invested and which is taxed in the city or town in which it is situated. . . . It is well settled that the shareholder is not constitutionally entitled to a deduction for a proportionate amount of the capital of the corporation that is invested in the United States bonds, state bonds or other securities which are themselves exempt from taxation.''

Again, in section 254 of 26 R. C. L., it is said: ''So, also, the shares of stock are taxable to the owners even if the capital stock of the corporation is exempt from taxation by law. In fact, a general statute requiring the taxation of all property within the state will be construed as requiring the taxation of shares in foreign corporations owned by residents of the state without deduction on account of the property of the corporation located and taxed outside the state even when the constitution of the state expressly prohibits double taxation or when the property of the corporation is located and taxed within the state.''

An exemption from taxation will never be presumed, and the burden is on a claimant to establish clearly his right to an exemption. In the case of *Morris Ice Co.* v.

*Adams,* 75 Miss. 410, 22 So. 944, the court said that: "The rule is universal that he who claims exemption must show, affirmatively, an exemption expressly declared and that the claimant is clearly embraced within the terms of the exemption."

While in Cooley on Taxation, vol. 2 (4 Ed.), p. 1407, the doctrine is announced that: "If an exemption is found to exist, it must not be enlarged by construction, since the reasonable presumption is that the state has granted in express terms all it intended to grant at all, and that unless the privilege is limited to the very terms of the statute the favor would be extended beyond what was meant."

There is in our statutory law no definite scheme provided for returning for assessment the shares of stock of a foreign corporation, but section 4267, Code of 1906, section 6901, Hemingway's Code, provides a detailed scheme or method of fixing the taxable value of the stock of domestic corporations, and for returning the same for assessment, and provides that the capital stock of such company or corporation shall be assessed to it for taxation to the extent of the full amount of the value thereof, less the value of its assessed and taxed real estate. In the case of *State* v. *Simmons,* 70 Miss. 485, 12 So. 477, the court had under consideration the statutes then existing providing for the assessment of the capital stock of a domestic corporation, and it is fully recognized that the court there held that the intent and language of the pertinent statutes did not impose taxes on the shares of stock of a domestic corporation in the hands of owners thereof. The Simmons case, as well as the case of *Bank* v. *Oxford,* 70 Miss. 513, 12 So. 203, proceeds upon the theory that the capital stock of a domestic corporation is required to be assessed to the corporation (which, of course, is not true, and cannot be true, in the case of a foreign corporation), and that, since in the case of domestic corporations the stock has been taxed once to the corporation itself, the presumption is that it should not

be taxed again to the shareholder.  The Simmons case also held that in fixing the value of the stock for the purpose of taxation, the value of its property otherwise taxed should be deducted.  This rule for determining the assessable value of the stock of a domestic corporation was afterwards crystallized into statute in section 4267, Code of 1906, section 6901, Hemingway's Code, providing that the capital stock of such a company or corporation shall be assessed to it for taxation, and in determining the value of such stock for assessment, the value of its assessed and taxed real estate shall be deducted from its market value, while in the case of *Panola County* v. *Carrier,* 89 Miss. 277, 42 So. 347, it was held that the assessed value of the personal property of the corporation should also be deducted from the market value of such stock.  In several cases since the decision of the Simmons case, the court has had under consideration the taxation of shares of stock of a corporation; but in each of these cases the stock involved was that of a domestic corporation and the language of these cases must be limited to the questions involved.

Turning now to the general statutes with reference to taxation and exemptions from taxation, we find that section 4251, Code of 1906, section 6878, Hemingway's Code, which declares the general law and policy of the state in regard to exemption from taxation, provides that ''the following property, and no other, shall be exempt from taxation, to-wit.''  Then follows a detailed list of exemptions which does not include shares of stock in a foreign corporation.  This section is an express declaration that all property in the state shall be taxed except that which is specifically exempted.  The same result might have been accomplished by providing that ''all property in this state shall be taxed, except the following,'' and then inserting the enumerated list of property to be exempted.

Section 4257, Code of 1906, section 6888, Hemingway's Code, declares that—''All taxable property brought into the state or acquired or held by any person before the

first day of February shall be assessed, and taxes thereon paid for the current year.''

Chapter 101, Laws of 1916, section 6904, Hemingway's Code, provides a form for printed lists which the board of supervisors is required to furnish the tax assessors for the use of the taxpayers in returning their property for assessment, and one of the items of property which this list expressly requires the taxpayer to return for taxation is the ''value of all shares or certificates of stock in any corporation, stock company or association domiciled outside of this state.''

Section 4272, Code of 1906, section 6906, Hemingway's Code, requires that the tax list of every taxpayer shall be made out on one of these printed lists to be furnished by the assessor, and that this list shall be filled in ink, and the oath appended thereto executed by the taxpayer.

Sections 4264 and 4271, Code of 1906, sections 6898 and 6905, Hemingway's Code, also require that the printed list, furnished the taxpayer, and containing blanks for the valuation of property, shall have appended thereto an oath, to be executed by the taxpayer, that the list as returned is a just and true account of all the personal property owned by the taxpayer which is subject to taxation.

In addition to the foregoing provisions specifically designating shares of stock in a foreign corporation as taxable property, the list which the tax assessor is required by section 6904, Hemingway's Code, to furnish the taxpayer, contains an omnibus clause for the ''value of all other personal property owned by the party assessed subject to taxation not specifically mentioned.''

Chapter 134 of the Laws of 1918 authorized and directed the state tax commission to prescribe the form of tax lists to be used in the assessment of property for state and county purposes, and requires the board of supervisors of each county to furnish the assessor with printed lists for the assessment of property in accordance with the form of tax lists prepared and prescribed

by the state tax commission; and in pursuance of the authority of this act, the tax commission readopted the form of tax list prescribed by section 6904, Hemingway's Code, in so far as it provided for the listing and taxation of the "value of all shares or certificates of stock in any corporation, stock company or association, domiciled outside of this state."

By an examination of the constitutional provision that taxation shall be uniform and equal throughout the state, and property shall be taxed in proportion to its value, and shall be assessed for taxes under general laws, and by uniform rules, according to its true value, and the statutes carrying into effect these provisions, it will be noted that section 4251, Code of 1906, section 6878, Hemingway's Code, expressly provides that all property within the state shall be taxed, except such as may be expressly exempted. That shares of stock of a corporation are a species of personal property is self-evident, and in listing in this statute property that shall be exempt from taxation, shares of stock in a foreign corporation are not included, and there is no express exemption of such stock in any other or later statute, and none is claimed to exist. On the contrary, section 6904 of Hemingway's Code, which lists the items of taxable property and expressly includes therein shares of stock of a foreign corporation, which list in so far as it affects such stock was readopted and promulgated by the state tax commission under express legislative authority and command, is an express legislative declaration in clear and unambiguous terms that such stock is taxable in the hands of the resident owner thereof, and it would seem that an application of these various statutory provisions should end the inquiry.

However, the question of the taxation by a state of the shares of stock of foreign corporations generally, and under statutory provisions analogous to those of this state, has been often considered by the courts of the several states, as well as the supreme court of the United

States, and an analysis and application of some of these decisions will be helpful in the consideration of the applicable statutes of this state.

In the case of *State* v. *Kidd,* 125 Ala. 413, 28 So. 480, the Alabama court had under consideration the taxation in the hands of a resident of the shares of stock in a foreign railroad corporation. In that case the court stated that the revenue laws contained in the Codes of the state do not "expressly designate as taxable, shares in foreign corporations having no place of business or property in the state, though in each Code appears a general clause declaring subject to taxation 'all other property, real and personal, not otherwise specified.'" From this opinion it further appears that in section 3911, Alabama Code of 1896, subd. 9, in the schedule of taxable property is placed "every share of any corporation organized under the laws of this state or any other state or of the United States (other than railroad, telegraph, express and sleeping car companies, building and loan associations and banks or banking associations), to be assessed and collected in the county wherein such corporation has its chief or home office in this state, and to be assessed at its actual market value to the person in whose name such shares stand on the books of the corporation, and not to the corporation;" while the same section prescribes a mode for assessing shares, and also corporate property, and for deducting the value of the corporation's taxable property from the value of the shares. The Alabama court, in construing this section, held that, although the language thereof seemed to include all corporations, yet a reasonable interpretation of the whole provision for taxing shares confines it to shares in corporations having taxable property in the state, and that the provisions thereof could have no application to foreign corporations having no property and doing no business in the state, and in holding that the stock of such corporations was taxable said:

"By subjecting them the state does not infringe its general policy of avoiding double taxation, for the prop-

erty is not doubly taxed by its own laws; and it is not forced, by comity or otherwise, to conform to laws elsewhere in order to shelter property from burdens which, but for such foreign laws, would not have come upon it. That ownership of shares in capital stock is distinct from ownership of capital stock itself is generally if not everywhere recognized. Such shares are property, and as such, belong in, and are taxable in the state of the owner's residence, irrespective of legislation in another state.''

The above case was appealed to the supreme court of the United States, and that court held that ''the equal protection of the laws is not denied by'' the above-mentioned sections of the Alabama Code, ''for the taxation of railroad stock, because of the exemption of stock in domestic railroads and in others that list substantially all their property for taxation;'' the court saying:

''We see nothing to prevent a state from taxing stock in some domestic corporations and leaving stock in others untaxed on the ground that it taxes the property and franchises of the latter to an amount that imposes indirectly a proportional burden on the stock. . . .

''We say that the state in taxing stock may take into account the fact that the property and franchises of the corporation are untaxed, whereas in other cases they are taxed; and we say untaxed, because they are not taxed by the state in question. The real grievance in a case like the present is that, more than probably, they are taxed elsewhere. But with that the state of Alabama is not concerned. No doubt it would be a great advantage to the country and to the individual states if principles of taxation could be agreed upon which did not conflict with each other, and a common scheme could be adopted by which taxation of substantially the same property in two jurisdictions could be avoided. But the Constitution of the United States does not go so far. [Citing authorities.] The state of Alabama is not bound to make its laws harmonize in principle with those of other

states. If property is untaxed by its laws, then for the purpose of its laws the property is not taxed at all.'' *Kidd* v. *Alabama,* 188 U. S. 730, 23 S. Ct. 401, 47 L. Ed. 669.

In the cases of *Georgia R. & Banking Co.* v. *Wright,* 125 Ga. 589, 54 S. E. 52, and *Wright* v. *L. & N. R. R. Co.,* 195 U. S. 219, 25 S. Ct. 16, 49 L. Ed. 167, the question of the taxation of shares of stock of a foreign corporation was presented, and constitutional and statutory provisions affecting the taxation of shares of stock of both domestic and foreign corporations were invoked and construed which are analogous to the statutes of this state affecting the taxation of stock in foreign corporations, and to the result reached in the case of *State* v. *Simmons,* 70 Miss. 485, 12 So. 477, in construing the statutes providing for the taxation of stock of domestic corporations.

In the case of *Georgia R. & Banking Co.* v. *Wright,* *supra,* the Georgia court said: ''The Constitution of this state imperatively requires that all property of every nature whatsoever within the territorial limits of this state shall be subjected to taxation, except that which the Constitution in terms declares the General Assembly may in their discretion exempt from taxation.''

Section 4251 of the Mississippi Code of 1906, section 6878, Hemingway's Code, in effect, declares that all property of every nature whatsoever within the territorial limits of this state shall be subjected to taxation, except that which is specifically exempted by statute. In the above-case the Georgia court further says that— ''After the passage of the act of 1888, no share of stock in a domestic corporation was taxable in the hands of a shareholder; for every domestic corporation was required by law to return its property either to the Comptroller General or the tax receiver of the county.''

This statutory provision of the state of Georgia is in exact accord with the construction which this court, in the case of *State* v. *Simmons, supra,* placed upon our

statutes providing for the taxation and assessment of shares of stock of domestic corporations. In the *Banking Company case, supra,* the Georgia court, in holding that under these constitutional and statutory provisions of that state, the shares of stock in a foreign corporation were taxable, said:

"The general assembly cannot make it a subject of taxation at an arbitrary value; but if it is a thing which can be brought and sold upon the market, it is within the authority of the lawmaking power to declare that for the purposes of taxation it shall be treated in the hands of the owner as of the value which it would command in the market. When that which gives it value has been taxed, the General Assembly is not required, under the Constitution, to tax it again through the medium of the shareholder. But it may do so; and when the tax levied is uniform on all shareholders of the same class, the constitutional provision as to uniformity is complied with. A shareholder in a domestic corporation whose property is taxed in the hands of the corporation by the state is not in the same class with the shareholder in a foreign corporation whose property is not taxed and cannot be taxed by the taxing authority of the state."

The analogy between the statutes of this state affecting the taxation of corporate stock and those of the state of Georgia is more apparent when we consider the language of the supreme court of the United States in the case of *Wright* v. *L. & N. R. R. Co.,* 195 U. S. 219, 25 S. Ct. 16, 49 L. Ed. 167, a case in which the Comptroller General of Georgia was seeking to collect from a domestic corporation taxes on the shares of stock of a foreign corporation owned by it, and in which that court refers to and discusses the Georgia constitutional and statutory provisions. In that case the court quotes the constitutional provision that "all taxation shall be uniform upon the same class of subjects, and *ad valorem* on all property subject to be taxed within the territorial limits of the authority levying the tax, and shall be levied and col-

lected under general laws," and refers to the constitutional provision making void all laws exempting property from taxation, other than the property therein enumerated, which does not include stock in a foreign corporation, and also the Georgia Laws of 1898, No. 150, section 2, pars. 1, 2, p. 22, as authorizing a tax on all taxable property of the state and in construing these provisions said:

"The natural inference from the foregoing language is that the Comptroller General was bound to collect this tax. . . . The argument against the tax is that the Constitution of Georgia is satisfied if all the lands and goods in the state are taxed once, and that the appearance of the same capital in two forms technically distinct ought not to be laid hold of as an excuse for two taxes. It is admitted that no such double taxation is enforced with regard to corporations, of which the property is taxed, within the state, and it hardly would be contended that this wise moderation is unconstitutional. . . . But, from the point of view of the taxpayer, it does not matter whether all of his double taxation is done in one state or half in one and half in another. He suffers the same injustice. . . .

"The difficulty with this argument is that the Georgia Constitution requires the taxation of all property subject to be taxed in Georgia. And while it may be that the constitutional requirement is sufficiently complied with when the land and chattels which give value to the stock pay a tax, without another tax on the stock, there is much more difficulty in saying that the words are satisfied if stock is left untaxed when the land and chattels cannot be reached. . . .

"Putting the case at the lowest, the above cited section of the Constitution was adopted in the interest of the state as a tax collector, and authorizes, if it does not require, a tax on the stock. In pursuance of the Constitution, the law of 1898, under which this tax is demanded, contains the following: 'In addition to the questions

now propounded to taxpayers by the tax receivers, questions shall be framed by the Comptroller General to reach all property upon which a tax is imposed by this act, and especially the following questions: . . . Thirtieth. How many shares of stock did you own on the day fixed for the return of property for taxation issued by corporations located without this state? Thirty-first. What was the gross nominal value thereof? Thirty-second. What was the fair market value thereof?' Laws of 1898, No. 150, section 16, p. 36. This plainly contemplates that the mandate of the Constitution shall be carried out.''

It will be noted that the three questions quoted above, which the Georgia act requires the taxpayer to answer, are practically identical with the provision of our statute requiring the taxpayer to disclose, list, and value for taxation the shares of stock of foreign corporations owned by him. In addition to this provision of our statute requiring the taxpayer to list stock in a foreign corporation for taxation, other provisions already quoted herein require the taxation of all property within the state, other than property specifically exempt, which does not include such stock, and it would seem, as said by United State supreme court, in the *Wright case, supra,* that legislation could not make the requirement to tax more explicit.

In the case of *Lee* v. *Sturges,* 46 Ohio St. 153, 19 N. E. 560, 2 L. R. A. 556, there was an effort on the part of the state of Ohio to collect taxes on the shares of stock of a foreign corporation which had only a portion of its property located and taxed in the state. The state of Ohio then had a statute exempting from taxation the shares of stock of all corporations which were required to return their capital and property for taxation. The Ohio court held that since all the capital and property of the corporation was not returned for taxation in that state, the exemption did not apply, and on appeal to the supreme court of the United States, in passing upon the question involved, the court said:

''The exemption from taxation of investments in stocks, provided by the statute, applies only to shares of those corporations which are required to return their capital and property for taxation in the state. *Jones* v. *Davis,* 35 Ohio St. 474. This clearly means those corporations which are required to return all, or substantially all, their capital and property. There is no rule of interpretation by which the statute can be held to apply to corporations who list only a small part of their property for taxation in Ohio. If the legislature had intended to allow an exemption in such a case, it could and would have expressed that purpose by words not admitting of doubt. As the shares of the plaintiff in error in the Western Union Telegraph Company were not only not expressly, but not even by fair implication, exempted from taxation, we are of opinion that the tax complained of was authorized by law.'' *Sturges* v. *Carter,* 144 U. S. 511, 5 S. Ct. 1014, 29 L. Ed. 240.

In the case of *Bacon* v. *Board of State Tax Commissioners,* 126 Mich. 22, 85 N. W. 307, 60 L. R. A. 321, 86 Am St. Rep. 524, it was held, headnotes 1 and 3, that— (1) ''The constitutional requirement of uniformity and equality in taxation is not violated by taxing shares of stock in foreign corporations and exempting those in domestic corporations, whose property is taxed within the state; and it is immaterial that the property, including the capital stock of the foreign corporations, is taxed at their domicile.'' (3) ''The provision of the Federal Constitution that full faith and credit shall be given in each state to the public acts of every other state does not prevent the taxation of stock in a foreign corporation owned by residents of the state because the property of the corporation is taxed at its domicile.''

Many cases from other states might be cited which have held that shares of stock in foreign corporations are taxable in the hands of resident owners, but most of these cases involve the construction of statutes of varying provisions, and consequently are only valuable in so far as

they discuss the general principles involved in the taxation of corporate stock, and for purposes of comparison.

Chaper 129 of the Laws of 1924, which we have herein held to be unconstitutional and void, is the first attempt of the legislature of this state to declare an exemption in favor of stock in a foreign corporation, and it is significant to note that section 2 of this act expressly declares that shares of stock of foreign corporations owned by residents of this state are thereby exempted from *ad valorem* taxation, and that the so-called privilege tax attempted to be imposed by section 1 of the act shall be in lieu of *ad valorem* taxation. Since this act is void, it may be that it would not properly be considered a legislative construction of prior statutes affecting the taxation of such stock; but, if so, it is at least a very strong indication of legislative thought on the subject. The act of 1924 having been declared void, all existing laws affected, or attempted to be repealed, thereby, are in full force and effect, and we are of the opinion that they clearly and unequivocally impose taxes on the shares of stock of a foreign corporation owned by residents of this state.

The second count of the declaration in the case at bar simply charged that on February 1, 1923, the defendant was the owner of ten shares of the capital stock of a foreign corporation, which was of the par and actual value of one hundred dollars per share; that these shares of stock were not assessed for the year 1923, as required by law; that the plaintiff as sheriff and tax collector had assessed the ten shares of stock against the defendant at its actual value as an additional assessment; that the taxes thereon calculated at the rate fixed by the state and county for the year 1923 were due; and that the defendant neglected and refused to pay this tax. The third ground of the demurrer challenged the sufficiency of these averments of the declaration, and it follows from the views herein expressed that we are of the opinion that this demurrer should have been overruled. The judgment of the court below sustaining the demurrer to

this count will therefore be reversed, and the cause re-
manded for trial on the second count.

> *Affirmed in part, and reversed in part.*

HOLDEN, J. (dissenting).

I cannot agree with the view reached by my brethren
as to the second count of the declaration in this case, but
I hardly think it worth while to set out my reasons at
length, and shall be content to say that it has never been,
and is not now, the policy of our laws to tax the shares
of stock of any corporation in the hands of a shareholder,
and this, too, whether the corporation be foreign or do-
mestic, whether domiciled here or in another state. *The
Simmons case,* 70 Miss. 485, 12 So. 477; *Bank* v. *Oxford,*
70 Miss. 513, 12 So. 203; and the *Carrier case,* 89 Miss.
277, 42 So. 347, and *Robertson* v. *Miss. Valley Co.,* 120
Miss. 159, 81 So. 799—when read carefully, are reason-
ably convincing that shares of stock in the hands of the
stockholder are not taxable under the laws of this state.

The broad and just principle seems to have been laid
down, especially in the Simmons case, that unless the
legislature expressly taxes the shares in the hands of
the shareholder, then they are not taxable, because to tax
the shares in the hands of the shareholder would be to
twice tax the capital stock or the property already taxed,
which is unfair and unjust; and while the legislature
has the power to double tax, it must clearly express its
purpose to do so, otherwise the courts will seek a rea-
son to defeat the double taxation. The shares of stock
being merely the evidence of the ownership of the capital
stock or the property of the corporation, it would be tax-
ing the corporation twice if the shares are taxed as well
as the capital stock or the corporate property.

No one doubts the authority of the state to double-tax
corporations, and it has been held that taxing shares in
a foreign corporation held by a citizen in another state
would not be double taxation in the strict sense, because
the taxation of the corporate property in the foreign

state would not be taxation in the same jurisdiction where the share is taxed in the hands of the shareholder. But the point I contend for is that it never has been and is not now the policy of our state to tax both the share in the hands of the shareholder and the capital stock or the property of the corporation, because to do so would be to tax the same property twice; it being presumed that the capital stock or the property is taxed where located or domiciled.

I do not think the legislature of this state has intended to tax the shares in the hands of the shareholder, because there is no statute for that express purpose, and since the rule in the Simmons case has been the guide in this state for several decades, and the legislature is presumed to have known it, it is my opinion the statutes relied upon by the majority opinion as authority for taxing the shares in the hands of the shareholders are not sufficient, and do not plainly and expressly authorize the taxation of shares in the hands of a shareholder, of either a foreign or domestic corporation.

If the legislature has expressly imposed the tax on the shares of stock, as now held by the majority opinion, and the tax is enforced, no revenue would be thereby obtained by the state; and, on the other hand, the securities in foreign corporations, held by citizens in this state, would be driven from our state, either by the holder disposing of his stock because it would be unprofitable to keep it, or he would move himself out of the state.

For illustration: If a citizen owns stock in a foreign corporation, for instance, a railroad corporation, and he is required to pay *ad valorem* taxes on the shares of stock, he would find it unprofitable to hold the stock, because the average tax levy in the municipalities of our state is six per cent., and the average dividends that the holder would receive upon his stock would be about six per cent.; therefore the investment would be wholly unprofitable and the stock would be disposed of. Foreign securities would thereby become undesirable. Consequently in a

very short time there would be no holder of shares in a foreign corporation left in the state, for the reason that the shareholder would either leave the state with his property or else sell the shares of stock to persons in some other state.

It would therefore result that the state would get no revenue from this character of tax, and the citizen who desired to invest his money in the stock of a foreign corporation, draw his dividends, and spend them in this state, would move to some other state so that he might be free to invest his capital in such profitable dividend-paying investments. In no event could the state profit by such a tax, even though the holder of shares in a foreign corporation should once render them for assessment.

Therefore, I am unwilling to charge the legislature with the intent to impose such taxation. They have not done so by any express statute, and the majority opinion must rely upon different statutes, pieced together, with the help of the state tax commission, all of which is added together, to impose the taxation. I think the majority is not warranted, by the statutes now in force, in holding that this character of property is assessable for *ad valorem* taxation. There is a plausible argument to support the views of the majority on this question, but I cannot bring myself to believe the legislature intended to impose the tax on shares in the hands of the shareholder, as the majority opinion maintains. A study of the authorities cited, by those who are interested enough to do so, will, in my judgment, result in forcing the conclusion that the law has always been against the principle of taxing property twice, or I may say, generally speaking, double taxation. And I shall follow the rule against such unjust taxation until the legislature legislates expressly to the contrary.

SMITH, C. J., concurs in above dissent.